(No. 36830.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIE NORVELL, Plaintiff in Error.

*Opinion filed May 25, 1962.*

THOMAS P. SULLIVAN, and ROBERT E. PFAFF, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

On November 3, 1941, after a three-day bench trial, the criminal court of Cook County found defendant guilty of murder and sentenced him to the penitentiary for a term of 199 years. The People have stipulated that defendant would testify that immediately after his conviction he made efforts to obtain a stenographic transcript of the trial proceedings for the purpose of having his conviction reviewed and that a transcript was not furnished because he could not pay for it. In 1956, after Rule 65—1(2) had been adopted, the criminal court ordered the official court reporter to furnish defendant, without cost, a complete stenographic transcript

of the entire trial proceedings because such a transcript was necessary to fully present for review alleged errors in his trial. Only a portion of the transcript has been furnished to defendant.

The defendant's trial was conducted on October 29, 30 and November 3, of 1941. E. M. Allen was the court reporter of the trial on October 30 and the morning of November 3. Gerald J. Healy was the court reporter of the trial on October 30 and the afternoon of November 3. Healy transcribed his stenographic notes and a copy of that transcript has been furnished to defendant. The stenographic notes made by E. M. Allen, who died on August 26, 1949, have never been transcribed. A hearing was conducted to determine whether Allen's notes could be transcribed or a bystander's report of proceedings constructed.

After it was determined that the stenographic notes of E. M. Allen could not be transcribed and that a bystander's report of proceedings could not be constructed for the portions of the trial attended by Allen, defendant moved for a new trial. This motion was denied and defendant sued out this writ of error.

Defendant asserts that in *Griffin* v. *Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. ed. 891, the Supreme Court held that where a State provides for review of alleged errors in a criminal trial which can be reviewed only by a transcript of proceedings at the trial, the State denies a constitutional right of an indigent defendant when it fails to furnish him with a free transcript or other suitable means for such review; that the court in *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U.S. 214, 78 S. Ct. 1061, 2 L. ed. 2d 1269, held that the ruling of the *Griffin* case was applicable even though an indigent defendant now seeking a transcript had been convicted and sentenced long before the *Griffin* case; that he was indigent when sentenced and requested a free transcript; that this request was denied; that his constitutional right to now have his conviction fully

reviewed has been denied; and that his conviction must therefore be set aside and a new trial granted, which if it results in conviction, can be fully reviewed.

A similar assertion was made in *People* v. *Berman,* 19 Ill.2d 579, where it was impossible to furnish defendant with a transcript of his trial because no stenographic notes of the proceedings had been made. We held that since it was not defendant's indigency which now prevented us from reviewing his conviction, the constitutional right announced in the *Griffin* case had not been denied. The Supreme Court of the United States thereafter denied Berman's petition for writ of *certiorari.* (365 U.S. 804, 81 S. Ct. 472.) The defendant points out, however, that the United States Supreme Court subsequently denied a petition for writ of *certiorari* (82 S. Ct. 59, 7 L. ed. 2d 39,) in the case of *Patterson* v. *Medberry,* 290 F.2d 275, where the United States Court of Appeals for the Tenth Circuit held that because an indigent defendant's 1939 trial could not be reviewed, a transcript of that trial being unavailable, the defendant must be given a new trial within six months or released from prison. Because the Court of Appeals for the Tenth Circuit, and probably the Seventh Circuit, (See *United States ex rel. Westbrook* v. *Randolph,* 259 F.2d 215) have given the *Griffin* and *Eskridge* cases an interpretation different from our interpretation (see *People* v. *Berman,* 19 Ill.2d 579,) we give the question further consideration.

On April 23, 1956, the United States Supreme Court held that a State denies a constitutional right guaranteed by the fourteenth amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials. (*Griffin* v. *Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. ed. 891.) The effect of this decision was to invalidate any financial barriers imposed by the State which restrict the availability of appellate review for indigent defendants. (See *Burns* v. *Ohio,* 360 U.S. 252, 79 S. Ct. 1164, 3 L. ed. 2d 1209; *Smith* v. *Ben-*

*nett,* 365 U.S. 708;· 81 S. Ct. 895.) In the *Eskridge* case the court did not hold that the failure to furnish defendant with a free transcript in 1935 denied him a right guaranteed by the fourteenth amendment, but held that the failure in 1956 to furnish him with a free transcript which was still available denied him of such a right. This holding made it clear that such financial barriers could no longer be imposed by the State even though the indigent defendant was sentenced prior to the time the restrictions were invalidated. We had, of course, already removed financial barriers which prevented indigent defendants sentenced prior to the *Griffin* case from now securing free transcripts if it is possible to obtain them. Ill. Rev. Stat. 1957, chap. 110, par. 101.65—1(2).

There is no indication in the *Griffin* or *Eskridge* cases however that the financial barriers then and there announced to be invalid were always invalid restrictions. The economic restrictions invalidated by the *Griffin* decision were, of course, imposed by statutes, application of statutes, court rules and court decisions. It is apparent that the retroactive invalidity of these restrictions must be examined in the light of those considerations which dictate the retroactive invalidity of a statute or prior court decision.

The court in *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U.S. 371, 60 S. Ct. 317, 84 L. ed. 329, did point out that the invalidation of a statute cannot justify an all-inclusive statement of a principle of absolute retroactive invalidity. The court was there asked to rule upon the validity of a final decree entered pursuant to an act of Congress prior to the time the act was declared to be unconstitutional by the court. In commenting on the retroactive invalidity of the act, the court stated: "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged de-

cree. * * * It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. * * * Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." (308 U.S. at 374, 60 S. Ct. at 318-319.) The court went on to hold the decree valid.

The actual existence and operative effect of the economic barriers which restricted the availability of appellate review for indigent defendants prior to the *Griffin* case is a fact which cannot be ignored. The invalidation of these economic restrictions could not undo the consequences already suffered as a result of their existence and operation. These actualities dictate that only prospective effect be given to the invalidation of such restrictions.

We are of the opinion that the intent, purpose and effect of the *Griffin* decision was to merely invalidate all existing financial barriers imposed by the State which restricted the availability of appellate review for indigent defendants and were not to otherwise affect final judgments of conviction. (*People* v. *Berman,* 19 Ill.2d 579; Cf. *Chicot Drainage Dist.* v. *Baxter State Bank,* 308 U.S. 371, 60 S. Ct. 317, 84 L. ed. 329.) The judgment of the criminal court of Cook County denying defendant's motion for a new trial is affirmed.

*Judgment affirmed.*